Michael Farhi, Esq.
**KATES NUSSMAN ELLIS**
 **FARHI & EARLE, LLP**
190 Moore Street, Suite 306
Hackensack, New Jersey 07601
(201) 488-7211 (T)
mfarhi@nklaw.com

*Attorneys for Jus Broadcasting Corp.,*
*Jus Punjabi, LLC, Jus One Corp.,*
*Jus Broadcasting Corp. Pvt Ltd., and*
*Penny Sandhu*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| KASHMIR GILL,<br><br>Plaintiff,<br><br>v.<br><br>JUS BROADCASTING CORP., JUS PUNJABI, LLC, JUS ONE CORP., JUS BROADCASTING CORP. PVT LTD. and PENNY SANDHU<br><br>Defendants. | CIVIL ACTION NO.: 3:19-cv-06742 FLW–TJB<br><br>*FILED ELECTRONICALLY*<br><br>**RETURN DATE: July 1, 2019**<br><br>**REPLY DECLARATION OF PENNY K. SANDHU** |

**PENNY K. SANDHU** declares under penalty of perjury as follows:

1. I am the only individual defendant named in this action. As in my main underlying declaration, I submit this reply declaration in support of defendants' motion to dismiss this action on jurisdictional grounds under Fed. R. Civ. P. 12(b)(2) and improper venue grounds under Fed. R. Civ. P. 12(b)(3). Except as otherwise specifically indicated, I have personal knowledge of the facts set forth in this reply declaration.

1

## Introduction and Summary

2. In the interests of brevity, I will not repeat the essential factual points contained in my main declaration that reveal that neither the defendant entities I own and control nor I are subject to the jurisdiction of this Court. I do emphasize, however, that plaintiff Kashmir Gill ("Gill") does not dispute that Jus Punjabi – the name by which my satellite broadcasting system is known throughout the United States, Canada, the United Kingdom, India and elsewhere – has always maintained its executive offices, broadcasting facilities, and staff in New York and never in New Jersey.

## The Errors of the Gill Opposition

### A. The Lakhvinder Singh Documents

3. In an obvious effort to divert the Court's attention from the jurisdictional and venue issues raised by this motion, Gill's papers (*see* Affidavit of Kashmir Gill filed May 20, 2019 ("Gill Aff.")) focus primarily on extraneous material and persons. For example, Gill devotes a great deal of attention to dealings in which Lakhvinder Singh ("Singh"), Parveen Gujral ("Gujral") – who is Singh's wife – and I engaged approximately 13 years ago. Significantly, Singh and Gujral were residents of *New York* with no connection to New Jersey. The transactions among them, Jus Punjabi and myself were *all* negotiated in and took place in New York, and Gill had nothing to do with these matters.

4. One of the centerpieces of Gill's papers is Exhibit B to his affidavit. The exhibit is a copy of an approximately 25-page document entitled "Operating Agreement of Jus Punjabi, LLC" dated *September 20, 2006 – in other words,*

*approximately thirteen years ago*. This was also approximately four or five years before I ever met Gill.

5. There are several crucial points about this 2006 document and Gill's extensive references to the document. *First*, the document itself contains no references to Gill or any person or entity associated with him. *Second*, the document is devoid of references to New Jersey for the simple reason that it was negotiated and executed in New York. *Third*, the only people who signed the document – myself under my original name Pawanjit Yogiraj – and Gujral were residents of New York, not New Jersey.

6. Even more important, the September 2006 document to which Gill devotes so much attention was wholly terminated by 2008, when I re-acquired the entire interest in Jus Punjabi. I had always retained, even during my dealings with Singh and Gujral, the overwhelming majority ownership interest in Jus Punjabi and my management and control were always complete.

7. In a similar effort to distract from the real issues, Gill introduces the name Karl Khandalawala ("Khandalawala"). Any interest Khandalawala may have had in Jus Punjabi terminated years ago and he has not been an executive, employee, minority owner or manager of Jus Punjabi in years. And, as was the case with Singh and Gujral, Khandalawala was a New York resident and any transactions involving him took place in New York.[1]

---

[1] It merits re-emphasis that *at all times* since my envisioning and establishing Jus Punjabi in 2005-2007 I have been the founder, leader and manager of the networks. Despite his bizarre claims of "ownership," Gill *never* received a share certificate, membership certificate or any written partnership or other document. He was never a "partner" nor an "owner." To the extent that Gujral, Khandalawala or anyone else may have temporarily had minority shares or minority interests, that never had any bearing on Gill.

3

B. **The "Dollar Bill" Incident**

8. In an extraordinary effort to somehow advance his position, Gill annexes, as Exhibit D to his affidavit, a copy of a one dollar bill with the words "[p]artnership for life" which he claims I signed. It appears to bear the date March 4, 2013. I have no memory of this enigmatic dollar bill and no way to begin to understand why Gill, who was married at the time and still is, would have kept it for six years, assuming for a moment that it is genuine.

9. In any event, the handwriting on the one dollar bill never resulted in a "partnership for life." Whatever the words may have signified (if anything), Gill never received a partnership agreement, nor, for that matter, did he ever receive, as I have repeatedly emphasized, a corporate share certificate, a membership certificate in a limited liability entity, a loan agreement or any document that would support his assertion that he somehow "owns" a significant portion of Jus Punjabi or for that matter any interest in Jus Punjabi.

C. **The Emails**

10. Gill also annexes to his affidavit a single page email exchange (*see* Gill Aff., Exhibit D). The exchange is dated August 25, 2016, as reflected on an email from me to Gill, and September 2, 2016, as reflected in an email from Gill to me.

11. In reality, the genesis of this short email chain was that it was *Gill* who requested that I provide him with an email so that, as he explained it at the time, he and his accountants could resolve *Gill's* tax issues with the Internal Revenue Service in Gill's favor.

4

12. Interestingly, Gill writes in his September 2, 2016 email to me that he *"never received any documentation to that effect"* (*see* Gill Aff., Exhibit D, emphasis added). That is a reference to the fact that he never received a stock certificate or any document that purported to reflect that Gill was my "partner" or that he was ever a "shareholder."

**D.     Other Matters**

   **(i)     Travel**

13. Gill makes several references to my driving to New Jersey over the course of a multiple-year period. Of course, I have at times over a period of several decades driven for short trips to New Jersey. On a few of those occasions I did meet with Gill. He resided in New Jersey and it is in New Jersey that he and his brother owned and operated a huge oil and fuel distribution business.

14. In contrast, Gill, in the eight or nine years that I have known him, has driven to Jus Punjabi's offices in New York hundreds of times. He has most often arrived unannounced and uninvited. He has consumed many hours of my and my staff's time with any and all conversations he has wanted to have.

15. Indeed, Gill's visits to Jus Punjabi's office in New York have largely given the impression that he is stalking me. Gill has made it clear that, like a spy, he has a penchant for secretly recording conversations with me and others, both in personal and professional settings.

16. In fact, I have in my possession a pen belonging to Gill that is in reality a recording device which he left in my office on May 31, 2018. On that day, Gill, as he

repeatedly did, arrived at my office unannounced, and proceeded to converse with me in an unusual manner. He repeatedly made statements regarding supposed business issues, and obviously was goading me in an unsuccessful attempt to confirm his untrue statements.

17. Because of his bizarre conduct and his own fabricated statements, I flatly asked him if he was recording the conversation. He vehemently denied it but seemed flustered. Unconvinced, I asked Gill if I could check the laptop bag he had brought with him to confirm his claim that he was not recording the conversation.

18. I did examine Gill's laptop bag which he had brought to my office. In fact, as I saw, Gill's bag contained not one but three separate recording devices, one of which was disguised as a writing pen.

19. All three devices in Gill's bag were switched on and functioning throughout his May 31, 2018 conversation with me. To confirm this, I took one of the devices and attempted to play the recording on my computer.

20. At this point, Gill became visibly angry and volatile and lunged at me in a threatening manner to grab the device before I could play it. Concerned for my personal safety, I immediately pulled back from the computer but held firmly to the recording device. At this point, continuously concerned for my safety, I phoned one of Jus Punjabi's engineers and asked him to come to my office.

21. The engineer assisted me in confirming that not only was the device actively recording the conversation but identifying the actual audio file for the recording.

22. After the engineer left my office, Gill once again lunged at me to physically wrestle the device from my hands. I retreated from him and loudly insisted he

back off. At this point, Gill did step back, changing his demeanor from physically threaterning and angry to distressed and remorseful.

23. In a confession of his misconduct and shame, Gill admitted not only that he was recording me in this meeting but also had done so in several instances in the past.

24. Moreover, he admitted that he was in the habit of secretly recording conversations with many other people in his business and personal encounters.

25. At this point in our May 31, 2018 meeting, I personally barred Gill from ever coming to my office or Jus Punjabi again.

26. After this very disturbing incident, I attended a conference in the Manhattan office of my personal attorney of many years, Paul Batista. Also present at the conference were Gill and his attorney, Alan Ackerman. I was present when Ackerman instructed Gill *not* to have any further contact with me or anyone associated with me and *not* to enter Jus Punjabi's offices.

27. Despite the warnings he received from his own lawyer – warnings which I heard in full and by which Gill said he would abide – Gill has continued his obsession with me and people close to me. Among other things, several employees of Jus Punjabi have observed Gill sitting for long periods of time in his car on a street immediately adjacent to Jus Punjabi's offices in Long Island City.

28. Even more disturbing to me is that even after Gill's own lawyer in my presence admonished Gill to stay away from me, Gill has continued to call my adult daughter to persuade me to reconsider barring Gill from my life.

29. All of this leads me to conclude that this ludicrous and frivolous lawsuit is yet another pathetic attempt by Gill to gain my personal attention and to impinge on my personal and professional life.

### (ii) Advertising

30. As a satellite broadcasting network, Jus Punjabi provides programming throughout the United States, as well as in Canada and the United Kingdom.

31. As is the case with any business, particularly one in the media industry, it is obvious that Jus Punjabi requires revenue to operate and grow. For that reason, Jus Punjabi has business relationships with advertisers and attempts to solicit advertisers to establish and maintain business relations. (The other principal source of revenue for satellite operations such as Jus Punjabi consists of subscriptions from viewers.)

32. Although Gill's papers refer to New Jersey-based advertisers, neither Gill nor his attorney provides any specific or credible information other than to claim that Jus Punjabi has had some advertisers in New Jersey.

33. In fact, Jus Punjabi solicits advertisers from every state in the nation. *Crucially, the most recently available information discloses that only 3.57% of Jus Punjabi's current advertisers are located in New Jersey*, and those advertisers represent only a minimal amount of Jus Punjabi's total advertising revenue.

34. Jus Punjabi has a staff that devotes itself to contacting any and all potential advertisers in the United States, Canada, the United Kingdom and elsewhere.

35. As to the subscriber base, it is impossible for Jus Punjabi to know how many viewers subscribe to its programming or where any of them is located. This is

*Punjabi's current advertisers are located in New Jersey*, and those advertisers represent only a minimal amount of Jus Punjabi's total advertising revenue.

34. Jus Punjabi has a staff that devotes itself to contacting any and all potential advertisers in the United States, Canada, the United Kingdom and elsewhere.

35. As to the subscriber base, it is impossible for Jus Punjabi to know how many viewers subscribe to its programming or where any of them is located. This is because the satellite broadcasting industry is structured in such a way that only the satellite distribution companies, such as DISH and Spectrum, know who the subscribers are and where they are located and the subscribers pay entities such as DISH and Spectrum. Those companies do not share information about their customers with Jus Punjabi or any other producer. Moreover, Jus Punjabi does not structure any of its programming to appeal to New Jersey audiences.

## Conclusion

36. For all the foregoing reasons, I respectfully request that defendants' motions to dismiss on jurisdictional and venue grounds be granted.

Dated: June 3, 2019

_____
PENNY K. SANDHU